Aaron ABRAMSON, et al.

v.

FLORIDA GAS TRANSMISSION COMPANY, et al.

Civ. A. Nos. 91–4255, 93–2404.

United States District Court, E.D. Louisiana.

Nov. 29, 1995.

hige, Louis B. Merhige, Attorney at Law, Metairie, LA, Aaron Abramson, in his capacity as Trustee of the Debra Rose Abramson Family Trust created by Act of Trust dated 5/28/86 & recorded at Orig. 334 in BNDL 9856.

Louis B. Merhige, Louis B. Merhige, Attorney at Law, Metairie, LA, Alfred Abramson, Joseph Abramson, Carol Abramson Schudmak, Eugenie Marrus Abramson, Steven M. Brainis, Joseph M. Brainis, David Brainis, Lucy Abramson Brainis, Debra Brainis Lester, Sara Brainis Rambin, Ethel Abramson.

Michael Ray Mangham, Michael J. O'Shee, Mangham & Hardy, Lafayette, LA, Louis P. Soldano Florida Gas Transmission Co., Houston, TX, for Florida Gas Transmission Company.

Bryan David Fisher, Hank Seldon Hannah, Hannah, Colvin & Pipes, Baton Rouge, LA, for Ralston & Associates, Inc.

Stephen Louis Huber, Borrello, Huber & Dubuclet, Metairie, LA, Lawrence Emig Larmann, W. Evan Plauché, Hailey, McNamara, Hall, Larmann and Papale, Metairie, LA, for Henkels & McCoy Inc.

Lawrence Emig Larmann, Dominic J. Ovella, W. Evan Plauché, Hailey, McNamara, Hall, Larmann and Papale, Metairie, LA, Russell Louis Sylvester, Brittain & Sylvester, Natchitoches, LA, for Liberty Mutual Ins. Co.

Eric Shuman, McGlinchey, Stafford and Lang, PC, New Orleans, LA, Richard W. Bryan, Douglas C. McAllister, Jackson & Campbell, Washington, DC, for National Union Fire Ins. Co. of Pittsburgh.

Karen Delcambre McCarthy, Lanny R. Zatzkis, Yvette Anne D'Aunoy, Zatzkis & Associates, New Orleans, LA, Louis B. Mer-

## ORDER AND REASONS

JONES, District Judge.

Pending before this Court is "Plaintiffs' Motion to Exclude Witnesses from Testifying at Trial." This motion was submitted without oral argument on a previous date. Having reviewed the memoranda of the parties, the record and the applicable law, the Court GRANTS the motion in part and DENIES the motion in part.

## Background

Plaintiffs filed this lawsuit against various entities, including Henkels & McCoy, Inc., and Florida Gas Transmission Co., as a result of alleged damage to their property that allegedly occurred during a pipeline reconditioning project. The pipeline runs across plaintiffs' property and is owned by Florida Gas. Henkels & McCoy was the reconditioning contractor on the project.

On June 30, 1995, the Court ruled on plaintiffs' earlier "Motion to Exclude Witnesses from Testifying at Trial and/or to Strike Witnesses from Henkels & McCoy's Witness List." (R.Doc. 174.) The Court granted that motion in part and denied in part. *Id.* The Court also ordered that Henkels & McCoy file a supplemental and amending witness list in accord with the ruling. *Id.* The instant motion arises in part from the same dispute between the parties as to witnesses listed by Henkels & McCoy.

Plaintiffs seek to exclude from testifying at trial four categories of witnesses:

1) neighbors of plaintiffs who allegedly have no relevant testimony to offer and/or who will offer redundant and cumulative testimony;

2) expert witnesses of defendants whose testimony will allegedly relate to the toxic or hazardous nature of waste allegedly left on plaintiffs' property;

3) innominate witnesses listed by Henkels & McCoy; and,

4) several persons listed as witnesses who work or worked for Florida Gas but who had not been produced as witnesses by Florida Gas pursuant to a Fed.R.Civ.P. 30(b)(6) deposition of Florida Gas employees by plaintiffs. As to this last category plaintiffs also contend that the witnesses would offer only redundant testimony.

In opposition Henkels & McCoy disputes whether the neighbors will offer redundant and/or irrelevant testimony. As to the expert witnesses, Henkels & McCoy asserts that they are entitled to call these witnesses to rebut plaintiffs' contention that they are entitled to remediation damages. Finally, as to the Florida Gas employees listed by Henkels & McCoy on its supplemental witness list, Henkels & McCoy theorizes that they will provide relevant testimony if called and that plaintiff has had an opportunity to depose these witnesses.

Florida Gas filed an opposition maintaining that it has no objection to striking certain witnesses from its witness list but not others. Florida Gas contends that one of these witnesses is not an employee of Florida Gas and that it did not have to produce this witness at the Rule 30(b)(6) deposition. As to the other fact witness that it objects to striking, Florida Gas argues that this witness has been and is available to plaintiffs for deposition. Finally, Florida Gas disputes plaintiffs' position as to the striking of certain expert witnesses.

## Law and Application

### I. Evidentiary Rules

Rules 401 and 402 of the Federal Rules of Evidence provide that relevant evidence, *i.e.*, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," is admissible and that, conversely, irrelevant evidence is inadmissible. Rule 403 further provides, in pertinent part, that relevant evidence may be excluded "by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

While Rule 26(a)(3) of the Federal Rules of Civil Procedure provides that the names and addresses of witnesses to be used by the parties shall be exchanged, the Eastern District of Louisiana has opted out of this rule, as allowed by Rule 26(a)(1). *See* U.L.L.R. 6.06E(b) (scope and timing of disclosures under Rule 26(a)(3) "shall be as directed by the court pursuant to the Civil Justice Expense and Delay Reduction Plan of this court.") Hence, disclosure is as ordered in the notice sent following the preliminary conference with the parties, which only requires that the names of potential witnesses, not their addresses and telephone numbers, be provided. Article Two (1), Civil Justice Expense and Delay Reduction Plan, United States District Court for the Eastern District of Louisiana, and Appendix B thereto.

The Court reviews plaintiffs' motion against these evidentiary standards and discovery provisions.

## II. Neighbors as Witnesses

■ Plaintiffs seek to exclude a number of witnesses listed on Henkels & McCoy's supplemental witness list[1] for several reasons. First, plaintiffs argue that instead of Henkels & McCoy providing a detailed summary of these witnesses' testimony, as ordered by the Court in its previous ruling,[2] Henkels & McCoy has only provided two generic summaries of these witnesses' expected testimony. As to most of these witnesses, Henkels & McCoy has proposed that they "[w]ill testify regarding facts and circumstances surrounding the 1990 pipeline reconditioning project and whether he experienced any property damage as a result of the 1990 project."[3] As to three other witnesses—John James Carmena, Leonard Long and Warren Mengis—Henkels & McCoy has stated that they "[w]ill testify regarding the Florida Gas Transmission Company Pipeline reconditioning project and the acts of Florida Gas and/or Henkels & McCoy in regard to the pipeline reconditioning project."[4]

Plaintiffs also assert that this testimony will be cumulative and redundant and that their interviews with these witnesses, as detailed in their memorandum in support,[5] confirm that they have no relevant evidence to offer.

Henkels & McCoy counters that these witnesses will offer relevant testimony because they are familiar with the project and can offer testimony about damage to their own property and whether Henkels & McCoy acted properly as to the project.

The Court holds that the neighboring property owners will not be allowed to testify for two reasons. First, contrary to this Court's previous order, Henkels & McCoy did not provide "a detailed summary as to the areas in which these witnesses may testify."[6] Instead, Henkels & McCoy only provided two general descriptions of these witnesses' proposed testimony, which the Court finds much too vague to provide any useful information to plaintiffs. Second, the Court finds that the neighboring property owners' familiarity with the project and with damages to their own property is irrelevant for present purposes. The issue of damages, if any, relates to plaintiffs' property, not property owned by any other persons. Additionally, Henkels & McCoy has made no showing—other than an unsubstantiated statement—how the neighboring property owners' knowledge of the project as it was conducted on their property relates to how Henkels & McCoy performed the reconditioning on plaintiffs' property.

Hence, the Court grants plaintiffs' motion and excludes the testimony of any neighboring property owners from this matter.

## III. Innominate Witnesses

Because Henkels & McCoy offers no opposition to plaintiffs' request to strike the innominate witnesses listed on its supplemental and amended witness list, the Court grants plaintiffs' motion as to this issue.

## IV. Expert Witnesses

■ Plaintiffs seek to exclude the expert testimony of the following expert witnesses proposed by defendants: Dr. Lloyd Deuel Jr., Dr. Steve Steimle, Dr. William George, Dr. Thomas Maher, Mr. Donald Sagrera and Dr. Steve Nicholson.

In general, plaintiffs argue that because they have abandoned any claim as to punitive damages on the basis that the waste allegedly left on their property is hazardous,[7] the aforementioned experts should not be al-

---

**1.** These are: John James Carmena, Alvin Ray Chandler, Larry Hatcher, J.L. Henderson, Gladys Henderson, "Tupie" Henry, Lauren Jones, Leonard Long, Marjorie McDonald, Lawrence Newton, and Warren Mengis.

**2.** R.Doc. 174, p. 4.

**3.** R.Doc. 190.

**4.** *Id.*

**5.** R.Doc. 189, pp. 5–7.

**6.** R.Doc. 174, p. 4.

**7.** *See* "Joint Stipulation of Waiver of Punitive Damages Claim." (R.Doc. 178.)

lowed to testify because their expert reports relate only to whether the waste was hazardous or toxic in nature. In opposition, Florida Gas and Henkels & McCoy posit that these experts' testimony is relevant because plaintiffs are also claiming the necessity of remediation of their property and that these experts will show that remediation is unnecessary.

Before examining plaintiffs' arguments in depth as to each of these experts, the Court notes that plaintiffs make no specific argument as to Dr. Steve Steimle as they do as to the other defense experts, notwithstanding plaintiffs' naming of him as an expert whose testimony should be excluded.[8] Even so, the Court's review of Dr. Steimle's report indicates that his testimony will relate to plaintiffs' claim for remediation damages because Dr. Steimle concludes that "[t]he material left on the site poses no hazard and is merely de minimis construction debris [that] would normally be expected with this type of work."[9]

As to Dr. Deuel, plaintiffs contend that his proposed testimony is irrelevant because he was only "hired to opine" whether the waste was hazardous and/or toxic.[10] Florida Gas asserts that Dr. Deuel's testimony will relate to showing that remediation is unnecessary. Neither party has provided the Court with the deposition testimony of Dr. Deuel on which to base a ruling. Plaintiffs have only attached Dr. Deuel's expert report to their memorandum, so the Court's determination is based on the report alone.[11] It indicates that Dr. Deuel is a Research Soil Chemist who observed the plaintiffs' property twice and took soil, water and debris samples from the sites.[12] Dr. Deuel opined that tests of

pipe coating, tar paper and resin debris showed that the materials were not hazardous.[13] Additionally, soil samples where the debris was found exhibited insignificant levels of petroleum hydrocarbon.[14] Finally, Dr. Deuel intoned:

> The amount of debris I observed and picked up in January [1994] was less than I had recovered in March [1993], suggesting to me that the source is diminishing. It is my opinion that there has been no lasting or permanent damage to the land resource or its synthetic appeal.[15]

On the basis of this report, the Court is unwilling to exclude Dr. Deuel's testimony on the basis of plaintiffs' argument because the report obviously relates to the condition of the soil, the permanency of any damage, and, by obvious inference, the need for remediation.

Plaintiffs also attack Dr. George's proposed testimony as being related only to the hazardous and/or toxic nature of the waste. Henkels & McCoy maintains that Dr. George "will testify that if any material is in fact in the pipeline trench the material does not pose a threat or risk of harm to the Abramsons or the Harrisons or the surrounding environment."[16] Dr. George's report informs that he is a Professor of Pharmacology and Director of Toxicology at Tulane University Medical Center.[17] He was asked to address the "effect the gas pipeline right of way reconditioning project ... had on the [plaintiffs'] properties with respect to chemical contamination and/or possible adverse environmental effects" and "whether the property will need remediation."[18] Dr. George

---

**8.** Page 10 of plaintiff's memorandum in support is non-existent in the record. (R.Doc. 189.) The Court is unable to determine from the record whether this page specifically addresses the proposed testimony of Dr. Steimle.

**9.** Exh. E, p. 4, attached to plaintiffs' memorandum in support. (R.Doc. 189.)

**10.** Plaintiffs' memorandum in support, pp. 9–10. (R.Doc. 189.)

**11.** Similarly, the Court's ruling as to the other experts is based on their reports provided by plaintiffs, not any deposition testimony.

**12.** Exh. D, attached to plaintiffs' memorandum in support. (R.Doc. 189.)

**13.** *Id.*

**14.** *Id.*

**15.** *Id.*

**16.** Henkels & McCoy's memorandum in opposition, pp. 6–7. (R.Doc. 195.)

**17.** Exh. F, attached to plaintiffs' memorandum in support. (R.Doc. 189.)

**18.** *Id.*

found the tar at issue to be "identical to the tar used on roofs, highways, underground cables, etc." and that it would not "present a problem in terms of effects on livestock, wildlife, or even human health." [19]  He also found that the plastic found on the property similarly presented "no health hazard to humans, wildlife, domestic livestock or vegetation" with no chemical contamination of water and/or soil on the properties.[20]  He concluded: "It is therefore, [sic] my opinion as a toxicologist that the Abramson/Harrison Properties do no represent an environmental health risk and do not need to be remediated." [21]

Based on this opinion, the Court refuses to exclude Dr. George's testimony because it obviously relates not only to toxicity but also to the need for remediation.[22]

As to the joint expert report and expected testimony from experts Dr. Maher and Sagrera, plaintiffs contend that "they were hired by Florida Gas to determine if the soil on Plaintiffs' property is able to support life and/or crops." [23]  Plaintiffs argue that because they do not claim crop damage or that the soil cannot grow crops, these experts' testimony would be irrelevant.  Florida Gas counters that Maher and Sagrera's report addresses plaintiffs' damage claims relating to agricultural operations on Harrison's land, citing Richard Harrison's deposition testimony, and also discusses the condition of the property for which plaintiffs seek remediation damages.

Review of the Maher/Sagrera reports does not reveal their credentials, and the Court also notes that one page of the report is missing from the record.[24]  Thus, the Court is limited to ruling on the portions of the reports in the record.  On this basis, the Court declines to exclude these witnesses' testimony.  The first report finds that, as to the Harrison tract, "[v]ery little plastic and tar were noted" on the pipeline right-of-way and also finds no "significant problem with the plastic or tar from an agricultural standpoint." [25]  The report recommends "the same conditioning" as for the Abramson tract, i.e., by "subsoiling, disking, leveling, fertilizing, seeding and drainage." [26]  Quite obviously, this opinion relates to whether remediation of plaintiffs' land is necessary and is relevant.[27]

■ Finally, plaintiffs contend that the report of Dr. Nicholson, who is a veterinarian, is irrelevant because it claims that the waste did not cause any cattle losses while plaintiffs do not claim cattle loss as an element of damages.[28]  Florida Gas contends that Dr. Nicholson's testimony is to rebut plaintiff Richard Harrison's claims of cattle damage on the Harrison property.

In view of the plaintiffs' statement that they are not claiming any loss to cattle as an element of damages, which the Court construes as another judicial admission, see n. 26, supra, and, further, in view of Dr. Nicholson's expert report,[29] which the Court finds relates only to cattle loss, the Court finds that Dr. Nicholson's testimony is irrelevant. It will be barred.

In summary, on the basis of the present record, the Court refuses to exclude as wit-

19.  Id.

20.  Id.

21.  Id.

22.  Of course, Dr. George's testimony—if he is called—will be limited to the issue of remediation.

23.  Plaintiffs' memorandum in support, p. 11. (R.Doc. 189.)

24.  Page two of the February 16, 1994, report is not attached to Exh. G of plaintiffs' memorandum in support.  (R.Doc. 189.)

25.  Exh. G, p. 3, February 16, 1994, report.

26.  Id.

27.  The Court pretermits any ruling as to whether the report relates to alleged agricultural damage, which the plaintiffs judicially admit in their memorandum they do not claim.  (R.Doc. 189, p. 11.)

28.  Plaintiffs state: "[T]he Plaintiffs are not now, nor have they ever pled or claimed cattle loss as an element of damage, thus [sic] cattle losses are not an issue in this case."  Plaintiffs' memorandum in support, p. 11.  (R.Doc. 189.)

29.  Exh. H, attached to plaintiffs' memorandum in support.  (R.Doc. 189.)

nesses any of defendants' experts except Dr. Nicholson, whose testimony would only relate to an item of damages not claimed by plaintiffs.[30]

However, the Court advises defendants that they should carefully consider whether any of the proposed testimony by these experts is cumulative under Fed.R.Evid. 403. As the Court is only reviewing plaintiffs' contention as to whether the proposed expert testimony is relevant, however, the Court does not address that issue at this time.

### V. Florida Gas Employees

Plaintiffs seek to exclude the testimony of several persons listed on Henkels & McCoy's witness list who are employed or were employed by Florida Gas on the basis that they had not been produced by Florida Gas pursuant to a Rule 30(b)(6) deposition.[31] Plaintiffs also argue that these witnesses will provide testimony cumulative to one of Henkels & McCoy's own witnesses, Robert Johnston, and to other Florida Gas employees. Plaintiffs further argue that defendants violated the Fed.R.Civ.P. 23(a)(3) in not providing addresses and phone numbers for these witnesses.

Henkels & McCoy counters by stating that the Florida Gas employees will provide relevant, admissible testimony, and that plaintiffs had ample opportunity to depose these witnesses as they were provided with their names and addresses.

In its opposition, Florida Gas does not object to striking any of its employee witnesses except for Tom Aylor and Buddy Morris. As to Aylor, Florida Gas disputes that it had to produce him for the 30(b)(6) deposition because he is not a Florida Gas employee and contends that his name and address was provided to plaintiffs in January 1995, who chose not to depose Aylor. As to Buddy Morris, Florida Gas maintains that, although he is a Florida Gas employee, he has been and is available for deposition if plaintiffs so desire.

The Court first notes that, contrary to plaintiffs' supposition, Henkels & McCoy's supplemental witness list contains addresses for all of the Florida Gas employee-witnesses at issue.

As to witness Aylor, even though Florida Gas' witness and exhibit list did not provide any address as to Aylor, as explained above the Eastern District of Louisiana has opted out of this requirement of Rule 26(a)(3) through its Civil Justice Expense and Delay Reduction Plan. *See* U.L.L.R. 6.06E(b), *supra*.[32] Additionally, because Aylor neither was nor is a Florida Gas employee, Florida Gas was under no compulsion to produce him as a witness at a 30(b)(6) deposition. Thus, this aspect of plaintiffs' argument founders.

However, because plaintiffs claim that the telephone number for Aylor as listed by Henkels & McCoy has been disconnected, in the interest of justice and in order to allow plaintiffs an opportunity to interview Aylor, the Court will order that defendants provide an updated telephone number for Aylor to plaintiffs no later than Wednesday, November 29, 1995.

■ As to the other Florida Gas employees, the Court denies plaintiffs' motion. Henkels & McCoy is entitled to list these witnesses as "may call" witnesses and, because they do not or did not work for Henkels & McCoy, there exists no procedural fault because they were not produced by Florida Gas at the 30(b)(6) deposition.

---

**30.** The exclusion of Dr. Nicholson's testimony means that the Court will strictly enforce plaintiffs' judicial admission that they are not seeking *any* damages in any way related to cattle, cattle losses or cattle operations.

**31.** These witnesses are: Tom Aylor, Billy Boyd, Bob Brisco, Steve Crabtree, Steve Messick, Buddy Morris, Jerry Murphy, Allen Weatherford, J.R. Whitmire, and George Love.

**32.** The Court also notes that plaintiffs may have waived any objection on this basis. Florida Gas filed its witness and exhibit list in April 1995 (R.Doc. 137), but because plaintiffs did not object—as they did to Henkels & McCoy's witness list—until five months later in the instant motion. *Cf.* Fed.R.Civ.P. 23(a)(3) (within 14 days of pretrial disclosure of those witnesses whose testimony is expected to be taken by deposition and identification of exhibits, opposing party may file objections thereto and objections not made shall be deemed waived). However, the Court need not reach the issue of waiver in view of its finding *infra*.

Turning to the issue of Florida Gas witness Buddy Morris, the Court finds that his listing as a witness by Henkels & McCoy renders moot any issue as to whether Florida Gas should have produced him at a 30(b)(6) deposition. The Court also finds that plaintiffs have failed to provide any support for their unsubstantiated assertion that Morris should have been produced at a 30(b)(6) deposition. Their argument simply fails to carry the day.

Therefore, the Court will order that defendants provide an updated telephone number for potential witness Tom Aylor but will deny plaintiffs' motion in all other respects. As with other witnesses, however, the Court cautions defendants not to call any witnesses who will provide cumulative evidence.

### Conclusion

For the reasons set forth herein, the Court grants plaintiffs' motion and will exclude the testimony of the neighboring property owners and innominate witnesses listed by Henkels & McCoy on its supplemental witness list. The Court also will not allow Dr. Steve Nicholson to testify because plaintiffs have judicially admitted that they are not seeking any damages for cattle loss and Dr. Nicholson's report is confined to that issue. The Court also orders that defendants provide an updated telephone number for potential witness Tom Aylor to plaintiffs no later than 12 noon on Wednesday, November 29, 1995. In all other respects, the Court denies plaintiffs' motion.

Accordingly,

IT IS ORDERED that "Plaintiffs' Motion to Exclude Witnesses from Testifying at Trial" is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Henkels & McCoy, Inc., and/or Florida Gas Transmission Co. provide a correct telephone number to plaintiffs no later than 12 noon on Wednesday, November 29, 1995, as to potential witness Tom Aylor.